ORAL ARGUMENT NOT YET SCHEDULED

# No. 10-1313

## United States Court of Appeals
## for the District of Columbia Circuit

INDIANA UTILITY REGULATORY COMMISSION,

*Petitioner,*

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent.*

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

### BRIEF OF INTERVENOR
### AMERICAN ELECTRIC POWER SERVICE CORPORATION
### IN SUPPORT OF PETITIONER

STEVEN T. NOURSE
AMERICAN ELECTRIC POWER SERVICE
  CORP.
1 RIVERSIDE PLAZA, 29TH FLOOR
COLUMBUS, OHIO 43215

MONIQUE ROWTHAM-KENNEDY
AMERICAN ELECTRIC POWER SERVICE
  CORP.
801 PENNSYLVANIA AVE. N.W. SUITE 320
WASHINGTON, DC 20004

STEVEN J. ROSS
STEPTOE & JOHNSON LLP
1330 CONNECTICUT AVE., N.W.
WASHINGTON, DC 20036
(202) 429-6279

*Attorneys for Intervenor*
  *American Electric Power*
  *Service Corporation*

Intervenor Initial Brief: January 21, 2011

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.     Parties**

1.     Parties to the Petition for Review

The Petition for Review in this case was filed by the Indiana Utility

Regulatory Commission.  Respondent in this case is the Federal Energy Regulatory

Commission.  Intervenors in Support of Petitioner are American Public Power

Association, American Municipal Power, Inc., and American Electric Power

Service Corporation.  Intervenors in Support of Respondent are PJM

Interconnection, L.L.C., and PJM Industrial Customer Coalition.

2.     Parties to the Proceeding Below

The following were parties to the administrative proceedings (FERC Docket

No. ER09-701) from which this Petition for Review arises:

| | |
|---|---|
| Allegheny Electric Cooperative, Inc. | Indiana Office of Util. Cons. Counselor |
| American Electric Power Service Corp. | Indiana Utility Regulatory Commission |
| American Municipal Power-Ohio, Inc. | Integrys Energy Services, Inc. |
| American Public Power Ass'n | National Rural Electric Coop. Ass'n |
| Blue Ridge Power Agency | New Jersey Board of Public Utilities |
| Borough of Chambersburg, Penn. | North Carolina Electric Memb. Corp. |
| California Mun. Utilities Ass'n | Northern Illinois Mun. Power Agency |
| ClearChoice Energy | NRG Companies |
| Comverge Inc. | Old Dominion Electric Cooperative |
| CPower, Inc. | Pennsylvania Public Utility Comm'n |
| Delaware Mun. Electric Corp., Inc. | PJM Industrial Customer Coalition |
| Demand Response Alliance | PJM Interconnection, L.L.C. |
| Dominion Resources Services, Inc. | Public Service Comm'n of Maryland |
| Energy Curtailment Specialists, Inc. | Sam's East, Inc. |
| EnergyConnect, Inc. | Southern Maryland Electric Coop., Inc. |
| EnerNOC, Inc. | Virginia Municipal Electric Ass'n. |

Exelon Corporation                         ViridityEnergy, Inc.

Indiana Municipal Power Agency             Wal-Mart Stores East , LP

## B.    Rulings Under Review

Petitioner seeks review of the following orders of the Federal Energy

Regulatory Commission:

1)    *PJM Interconnection, L.L.C.*, Order Conditionally Accepting
      Proposed Tariff Revisions, Docket Nos. ER09-701-000 and -001,
      128 FERC ¶ 61,238 (Sept. 14, 2009); and

2)    *PJM Interconnection, L.L.C.* Order on Rehearing, Clarification,
      and Compliance, Docket Nos. ER09-701-002, -003 and -004,
      131 FERC ¶ 61,069 (Apr. 23, 2010).

## C.    Related Cases

The Petition for Review in this case initially was filed in the Seventh Circuit,

Case No. 10-2512.  That case was transferred to the District of Columbia Circuit

by order issued August 27, 2010, and reconsideration was denied on September 10,

2010.  This case has not previously been before this Court or any other court with

the noted exception of the transfer from the Seventh Circuit.  Counsel for

Intervenor American Electric Power Service Corporation is unaware of any related

cases pending before this Court or any other court.

## D.    Rule 26.1 Certificate

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and D.C.

Circuit Rule 26.1, Intervenor American Electric Power Service Company states

that it is a wholly-owned subsidiary of American Electric Power Company, Inc.,

a publicly-traded company.  No publicly-held company owns 10% or more of

American Electric Power Company.  Intervenor American Electric Power Service

Corporation provides management and professional services to American Electric

Power Company and its utility operating subsidiaries.

Respectfully submitted,

/s/ *Steven J. Ross*
Steven J. Ross
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, N.W.
Washington, DC  20036
(202) 429-6279

*Attorney for*
*American Electric Power Service Corporation*

# TABLE OF CONTENTS

I.      Statement of Jurisdiction ...................................................................1

II.     Statutes and Regulations....................................................................1

III.    Statement of Facts.............................................................................1

    A.      State and Federal Regulation of Demand Response Programs.............2

    B.      PJM's Demand Response Program ......................................................7

    C.      The FERC Orders Under Review.........................................................9

IV.     Summary of Argument ....................................................................11

V.      Argument .........................................................................................12

    A.      FERC Has No Authority to Direct Local Distribution
    Companies to Police Retail Customers' Compliance With State
    Law Requirements.............................................................................12

    B.      FERC's Other Arguments Cannot Overcome Its Lack of
    Authority ...........................................................................................16

VI.     Conclusion .......................................................................................18

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Fla. Power & Light Co. v. FERC*,
  617 F.2d 809 (D.C. Cir. 1980) ...........................................................17

\*Maine Pub. Utils. Comm'n v. FERC*,
  454 F.3d 278 (D.C. Cir. 2006) ...........................................................17

*Sierra Club v. Lynn*,
  502 F.2d 43 (5th Cir. 1974) ...............................................................15

\*United States Telecom Ass'n v. FCC*,
  359 F.3d 554 (D.C. Cir. 2004) ...........................................................14

## FEDERAL ADMINISTRATIVE AUTHORITIES

*Florida Power & Light Co.*,
  40 FERC ¶ 61,045 (1987) ...................................................................13

*PJM Interconnection, L.L.C.*,
  128 FERC ¶ 61,238 (2009) ("Initial Order") .................................9, 16

*PJM Interconnection, L.L.C.*,
  131 FERC ¶ 61,069 (2010) ("Rehearing Order") ..............10, 14, 16-17

*San Diego Gas & Electric Co.*,
  127 FERC ¶ 61,269 (2009) ................................................................15

*Wholesale Competition in Regions with Organized Electric Markets*, Order
  No. 719, 73 Fed. Reg. 61,400 (Oct. 28, 2008), FERC Stats & Regs. ¶
  31,281 (2008) ("Order No. 719"), *order on reh'g*, Order No. 719-A, 74
  Fed. Reg. 37,776 (Jul. 29, 2009), FERC Stats & Regs. ¶ 31,292 (2009)
  ("Order No. 719-A"), *order on reh'g*, Order No. 719-B, 129 FERC ¶
  61,252 (2009) ...................................................................... 4-5, 7, 12

\* Authorities chiefly relied upon are marked with an asterisk.

FEDERAL ADMINISTRATIVE REPORTS

Federal Energy Regulatory Commission, A National Assessment of Demand
Response Potential (Staff Report, June 2009) ......................................................2

STATE ADMINISTRATIVE AUTHORITIES

*In the Matter of the Commission's Investigation into Any and All Matters
Related to Commission Approval of Participation by Indiana End-Use
Customers in Demand Response Programs Offered by the Midwest ISO
and PJM Interconnection*, IURC Cause No. 43566, 2009 Ind. PUC
LEXIS 97 (Feb. 25, 2009) ("IURC Interim Order") ...........................................6

*In the Matter of the Commission's Investigation into Any and All Matters
Related to Commission Approval of Participation by Indiana End-Use
Customers in Demand Response Programs Offered by the Midwest ISO
and PJM Interconnection*, IURC Cause No. 43566, 2010 Ind. PUC
LEXIS 255 (Jul. 28, 2010) ("IURC July 2010 Order")...................................4, 6

STATUTES

16 U.S.C. § 824(a) ...............................................................................................13

16 U.S.C. § 824(c) ...............................................................................................14

16 U.S.C. § 824(d) ...............................................................................................13

16 U.S.C. § 824d .................................................................................................17

16 U.S.C. § 824d(a) .............................................................................................17

16 U.S.C. § 824d(e) .............................................................................................17

CODE OF FEDERAL REGULATIONS

18 C.F.R. § 35.2(a).............................................................................................13

18 C.F.R. § 35.28(g)(1)(iii)...........................................................................7, 12

# GLOSSARY

| | |
|---|---|
| AEP | American Electric Power Service Corporation and its electric utility affiliates, collectively |
| Aggregator | An entity that combines the demand response of one or more end-use or retail demand response providers |
| Demand response | Changes in electric usage by end-use customers from their normal consumption patterns in response to changes in the price of electricity over time, or to incentive payments designed to induce lower electricity use at times of high wholesale market prices or when system reliability is jeopardized |
| DOE | United States Department of Energy |
| FERC | Federal Energy Regulatory Commission |
| FPA | Federal Power Act, codified at 16 U.S.C. §§ 791a, *et seq*. (2006) |
| Indiana Commission | Indiana Utility Regulatory Commission (IURC) |
| Initial Order | *PJM Interconnection, L.L.C.*, 128 FERC ¶ 61,238 (2009) |
| IRP | Integrated Resource Plan |
| ISO | Independent System Operator |
| IURC Interim Order | *In the Matter of the Commission's Investigation into Any and All Matters Related to Commission Approval of Participation by Indiana End-Use Customers in Demand Response Programs Offered by the Midwest ISO and PJM Interconnection*, IURC Cause No. 43566, 2009 Ind. PUC LEXIS 97 (Feb. 25, 2009) |
| IURC July 2010 Order | *In the Matter of the Commission's Investigation into Any and All Matters Related to Commission Approval of Participation by Indiana End-Use Customers in Demand Response Programs Offered by the Midwest ISO and PJM Interconnection*, IURC Cause No. 43566, 2010 Ind. PUC LEXIS 255 (Jul. 28, 2010) |

| | |
|---|---|
| JA | Joint Appendix |
| PJM | PJM Interconnection, L.L.C., a FERC-approved RTO |
| Order No. 719 | *Wholesale Competition in Regions with Organized Electric Markets*, Order No. 719, 73 Fed. Reg. 61,400 (Oct. 28, 2008), FERC Stats & Regs. ¶ 31,281 (2008). |
| Order No. 719-A | Order No. 719-A, 74 Fed. Reg. 37,776 (Jul. 29, 2009), FERC Stats & Regs. ¶ 31,292 (2009). |
| Petitioner I.B. | Initial Brief of Petitioner Indiana Utility Regulatory Commission |
| R. | Record |
| Rehearing Order | *PJM Interconnection, L.L.C.*, 131 FERC ¶ 61,069 (2010) |
| RTO | Regional Transmission Organization |
| Tariff | The FERC-approved PJM tariff at issue in this review proceeding |

Pursuant to this Court's November 19, 2010, order, the American

Electric Power Service Corporation, on behalf of Indiana Michigan Power

Company and other affiliated electric utilities that are directly affected by

the Tariff provisions at issue in this proceeding (collectively referred to

herein as "AEP"), hereby submits its initial brief in support of Petitioner.

## I.     STATEMENT OF JURISDICTION

AEP adopts Petitioner's Statement of Jurisdiction.

## II.     STATUTES AND REGULATIONS

Except for 18 C.F.R. § 35.2, which is appended hereto, all applicable

Statutes and Regulations are contained in the Appendix to Petitioner's Initial

Brief.

## III.     STATEMENT OF FACTS

AEP adopts Petitioner's Statement of the Facts, as supplemented

herein.

This case involves the intersection of the regulatory structure in states

such as Indiana that have chosen to retain traditional, cost-based regulation

over their utilities' provision of retail electric service, and the regulatory

structure endorsed by the Respondent, FERC, to advance competition in

wholesale electric markets. In the orders under review, FERC approved

tariff provisions regarding retail "demand response" providers that conflict

with the demand response rules adopted by the Petitioner (the "Indiana Commission").  As a company whose utilities' wholesale business is regulated by FERC and directly affected by FERC-approved tariffs, and whose Indiana utility's retail business is regulated by the Indiana Commission, AEP sits squarely at the intersection of the two regulatory structures.

### A.    State and Federal Regulation of Demand Response Programs

Demand response in the electric utility industry is one of the demand-side (*i.e.*, retail end-use customer) management tools used to reduce electricity consumption.  In real-time, utilities call upon demand response either to lessen the risk that they may need to involuntarily interrupt service or to avoid the use of more expensive power plants.[1]  On a long-term

---

[1] FERC's Staff has used the same definition of "demand response" as the U.S. Department of Energy ("DOE"):

> Changes in electric usage by end-use customers from their normal consumption patterns in response to changes in the price of electricity over time, or to incentive payments designed to induce lower electricity use at times of high wholesale market prices or when system reliability is jeopardized.

Federal Energy Regulatory Commission, A National Assessment of Demand Response Potential, at ix n.2 (Staff Report, June 2009) (quoting a 2006 DOE report to Congress) available at: http://www.ferc.gov/legal/staff-reports/06-09-demand-response.pdf.

planning basis, utilities may rely upon the availability of demand response to reduce the amount of generation that they must build or procure to meet projected peak demand.

Virtually every state regulatory commission has approved some form of a demand response program under which participating retail customers agree to respond to signals to reduce their consumption, generally in return for reduced electric rates. A residential customer may, for example, agree that the utility may interrupt the customer's air conditioning unit during the summer months in return for a credit on the customer's bill.

As noted in its Initial Brief, the Indiana Commission has encouraged retail electric utilities to employ demand response programs. Brief of Petitioner Indiana Utility Regulatory Commission ("Petitioner I.B.") at 4. The Indiana Commission typically approves demand response programs through its review of each utility's integrated resource plan ("IRP"). The IRP process enables the Indiana Commission to review a utility's long-term plan to meet projected electricity demand, both through traditional supply-side resources (*i.e.,* generators) and demand-side measures, such as demand

response.  IURC July 2010 Order at \*\*128-29.[2]  The Indiana Commission

has stated that:

> …the more an Indiana electric utility can cost
> effectively rely on the demand response of its retail
> customers, the more it can delay or avoid the need
> for more costly, additional generating capacity.
> This delay or avoidance of new generating
> capacity reduces costs for all Indiana stakeholders.

*Id*. at \*129.

FERC likewise has encouraged the use of demand response as a

vehicle to reduce wholesale energy costs.  In its Order No. 719,[3] FERC

required regional transmission organizations ("RTOs") that administer

organized electric markets to adopt rules to enable retail demand response

providers to compete with traditional supply-side providers.  As FERC

stated, "enabling demand-side resources, as well as supply-side resources,

improves the economic operation of electric power markets by aligning

---

[2] *In the Matter of the Commission's Investigation into Any and All Matters Related to Commission Approval of Participation by Indiana End-Use Customers in Demand Response Programs Offered by the Midwest ISO and PJM Interconnection*, IURC Cause No. 43566, 2010 Ind. PUC LEXIS 255 (Jul. 28, 2010) ("IURC July 2010 Order").

[3] *Wholesale Competition in Regions with Organized Electric Markets*, Order No. 719, 73 Fed. Reg. 61,400 (Oct. 28, 2008), FERC Stats & Regs. ¶ 31,281 (2008) ("Order No. 719"), *order on reh'g*, Order No. 719-A, 74 Fed. Reg. 37,776 (Jul. 29, 2009), FERC Stats & Regs. ¶ 31,292 (2009) ("Order No. 719-A"), *order on reh'g*, Order No. 719-B, 129 FERC ¶ 61,252 (2009).

prices more closely with the value customers place on electric power.  A well-functioning competitive wholesale electric energy market should reflect current supply and demand conditions."  Order No. 719 at P 16. Accordingly, FERC obligated each RTO to adopt procedures to accept bids from demand response resources on a basis comparable to supply-side resources, as long as the demand response resources meet certain technical requirements and submit bids at or below the market-clearing price for electricity.  *Id.* at PP 47-53.[4]  So, for example, in a given hour, an eligible demand response bid of $75 for 100 megawatts could displace a generator that bid 100 megawatts at $80.  If the demand response bid were accepted, the customer would be required to reduce its consumption by 100 megawatts for the hour.

FERC was aware that RTO demand response programs might conflict with retail programs, especially in traditional cost-of-service states where the relationship between the utilities and their retail customers is pervasively regulated by the state utility commissions.  In a proceeding that paralleled

---

[4] FERC required RTOs to accept bids from individual retail customers as well as aggregators of small retail customers ("aggregators") that otherwise might not individually participate in the program:  "aggregating small retail customers into larger pools of resources expands the amount of resources available to the market, increases competition, helps reduce prices to consumers and enhances reliability."  Order No. 719 at P 154.

the Order No. 719 rulemaking, the Indiana Commission noted, "the relationship of demand response with integrated resource planning and other aspects of state ratemaking is complex and [] a new layer of [RTO] demand response tariffs cannot simply be added without also considering existing retail tariff structures."[5]  IURC Interim Order at *4.  The Indiana Commission later explained that while retail customers could participate in RTO programs to reduce their costs, the local utility would still need to procure power to meet those customers' full projected demands because the utility could not be sure that the RTO would call for demand response when it was needed by the local utility.  IURC July 2010 Order at *136.

     In response to concerns that Order No. 719 appeared to intrude on the jurisdiction of state utility commissions to oversee demand response programs, FERC made clear that it did not rule "on retail customers' eligibility, under state or local laws, to bid demand response into the organized markets, either independently or through an [aggregator]….  Nothing in the Final Rule authorizes a retail customer to violate existing

---

[5] *In the Matter of the Commission's Investigation into Any and All Matters Related to Commission Approval of Participation by Indiana End-Use Customers in Demand Response Programs Offered by the Midwest ISO and PJM Interconnection*, IURC Cause No. 43566, 2009 Ind. PUC LEXIS 97 (Feb. 25, 2009) ("IURC Interim Order").

state laws or regulations or contract rights.  In that regard, we leave it to the

appropriate state or local authorities to set and enforce their own

requirements."  Order No. 719-A at P 54.  In other words, an RTO could

accept bids from retail customers or aggregators only if the laws or

regulations in a particular state do not forbid retail customers from

participating in the RTO's demand response program.  *See*, *e.g*., Order No.

719 at P 155 (FERC's rules were codified in 18 C.F.R. § 35.28(g)(1)(iii), the

relevant part of which is quoted in the Petitioner I.B. at 10-11).

### B.     PJM's Demand Response Program

Several AEP electric utilities operate within the footprint of the PJM

Interconnection, L.L.C. ("PJM"), a FERC-approved RTO operating in

several Mid-Atlantic and Midwest states.  AEP buys and sells power in

PJM's wholesale electric markets subject to the terms of a FERC-approved

tariff that includes the demand response provisions at issue in this

proceeding.

PJM implemented a retail demand response program prior to Order

No. 719.  In recognition of concerns of certain state regulators, including the

Indiana Commission, that were raised in a 2005 complaint proceeding, PJM

agreed that Indiana retail customers could not participate in PJM's program

unless the retail customers first obtained the Indiana Commission's approval

- 7 -

to do so.  *See* Supplement to the Answer of PJM Interconnection, L.L.C., at

4, FERC Docket No. EL05-93-000 (July 15, 2005) (a copy of which is

attached hereto) (referred in the Petition I.B. as the "2005 Promise").

 In 2009, PJM filed to revise the demand response provisions in

purported compliance with Order No. 719 ("Tariff").  *See generally*, PJM

FERC filing, R.1; JA __-__ .  PJM acknowledged that a retail customer

(referred to in the Tariff as an "end-use customer") must ensure that there

are no laws or regulations prohibiting its participation in PJM's demand

response programs.  But PJM's proposed a revision to its Tariff that placed

upon each retail utility (referred to in the Tariff as an "electric distribution

company") the obligation to assert that the laws or regulations of the

"Relevant Electric Retail Regulatory Authority" (which includes the Indiana

Commission) prohibit a particular end-use customer from participating in

PJM's demand response program.  Under this new Tariff provision, if,

within ten days of receiving PJM's notice that an end-use customer had

registered to participate in the program, AEP did not assert and prove that

such customer's participation is prohibited by Indiana law, PJM would

accept the registration and thereafter accept the retail customer's demand

response bids.  *Id*. at 4, Tariff at 334-334A.01, 418-418A; R.1 at 4, Tariff at

334-334A.01, 418-418A; JA __, __-__, __-__.

The Indiana Commission protested PJM's Tariff proposal, arguing that PJM's decision to require utilities to determine whether retail customers were prohibited from participation was inconsistent with Order No. 719. R.15 at 16-17; JA__-__.  AEP likewise protested, raising the concern that it "would be placed in the unenviable position of interpreting state law and regulations and subjected to being accused of barring retail customers from access to PJM programs."  R.29 at 8; JA__.  AEP also argued that PJM's provision would sanction participation by unauthorized retail demand response providers should AEP "fail[] to act or fail[] to convince PJM that retail customers cannot participate…."  *Id*. at 9; JA __.  PJM responded that Order No. 719 provided RTOs with flexibility to craft tariff language.  PJM further argued that assigning this obligation to the retail utilities was not "particularly burdensome," and was consistent with PJM procedures under which those utilities are responsible for reviewing retail customers' demand response registrations for other purposes.  R.30 at 14; JA __.

## C.    The FERC Orders Under Review

In its initial order, FERC responded to the Indiana Commission's and AEP's protests in a single sentence:  "We agree with PJM that this proposal is consistent with Order No. 719, which provides RTOs and ISOs with substantial flexibility to develop procedures with respect to this issue."  *PJM*

*Interconnection, L.L.C.*, 128 FERC ¶ 61,238 at P 50 (2009) ("Initial Order");

R.59 at 16; JA___.  The Indiana Commission filed a timely rehearing

petition, asserting that the requirement that "the retail utility bear this

certification requirement is an impingement on the [Indiana Commission's]

jurisdictional authority over the retail utility." R.60 at 4-5; JA___.  The

Indiana Commission further contended that PJM's proposal "creates a

greater likelihood of confusion, miscommunication, and frustration that can

thwart an end-use customer's ability and motivation to participate in demand

response."  In that regard, the Indiana Commission discussed an instance

where PJM accepted an aggregator's registration even though neither the

aggregator nor the retail customer had obtained approval to participate in

PJM's demand response program.  *Id*. at 5-6; JA __-__.

FERC denied rehearing.  FERC noted that it had already rejected the

Indiana Commission's arguments and repeated the point that Order No. 719

granted PJM substantial flexibility.  *PJM Interconnection*, *L.L.C.*, 131 FERC

¶ 61,069 at P 10 (2010) ("Rehearing Order"); R.79 at 4; JA___.  FERC then

added a new rationale, arguing that retail utilities (such as AEP) are subject

to the authority of the retail regulators (such as the Indiana Commission),

and "[g]iven this regulatory nexus," FERC was "satisfied that the retail

regulatory authority will be able to exercise its full regulatory authority over

the retail utility, as it deems appropriate." *Id.* In other words, as long as the Indiana Commission has the authority to determine which retail customers may participate in PJM's demand response program and as long as AEP is subject to the Indiana Commission's authority, it is acceptable for PJM to require AEP to police each registering retail customer or aggregator for compliance with the Indiana Commission's rulings. Finally, FERC concluded that because PJM's Tariff provision was consistent with the previously-approved registration process in the Tariff, the Indiana Commission failed to show that adding the legal verification to this process was unjust and unreasonable. *Id.* at P 11.

## IV. SUMMARY OF ARGUMENT

FERC's response to the Indiana Commission's concerns was inadequate. First, FERC's assignment of a policing responsibility to the retail utility is outside the reach of FERC's authority. Second, FERC cannot overcome this infirmity by pointing to the "flexibility" purportedly provided to RTOs under Order No. 719, or by speculating as to the "confusion" that might have arisen under the Indiana Commission's alternate proposal. And third, FERC erred by shifting to the Indiana Commission the burden of showing that PJM's proposed change was unjust and unreasonable; PJM and

FERC bore the burden of showing how PJM's Tariff was consistent with

FERC's authority.

## V.  ARGUMENT

### A.  FERC Has No Authority to Direct Local Distribution Companies to Police Retail Customers' Compliance With State Law Requirements

In Order No. 719, FERC recognized the federal-state jurisdictional

dividing line by acknowledging that state law controls whether retail

customers may participate in RTO wholesale demand response programs.

Indeed, FERC made clear that an RTO "must not accept bids from an

aggregator of retail customers … where the relevant electric retail regulatory

authority prohibits such customers' demand response to be bid …."

18 C.F.R. § 35.28(g)(1)(iii); Order No. 719-A at PP 41-55.  So, for purposes

of this review proceeding, the parties agree that FERC has no authority to

determine whether individual retail customers may participate in PJM's

demand response program.  PJM's Tariff purported to abide by this

jurisdictional determination, but it did so by imposing upon retail utilities

such as AEP the burden to take specific action in order to preserve the state

regulators' admitted jurisdiction.  As AEP pointed out, however, if AEP

failed to alert PJM that a particular customer was not authorized to

participate in PJM's program, PJM would assume that the customer may

participate under PJM's FERC-approved Tariff.  But FERC has no authority

to require a retail utility to assume that role, because FERC has no

jurisdiction over retail customers or a retail utility's relationship with those

customers, and because FERC may not delegate its authority to third parties.

Section 201 of the FPA provides for federal regulation of the sale of

electric energy at wholesale in interstate commerce and the transmission of

such energy in interstate commerce, and declares that "such Federal

regulation [shall] extend only to those matters which are not subject to

regulation by the States."  FPA § 201(a), 16 U.S.C. § 824(a).  Consistent

with FERC's ruling in Order No. 719, demand response falls within those

matters left to the States to the extent that it involves compensating *retail*

electric end-use consumers for their commitment to *use less* electricity.

Indeed, FERC has never ruled that such a commitment is a *sale of electricity*

*at wholesale* under FPA Section 201(d), which defines the "sale of electric

energy at wholesale" as "a sale of electric energy to any person for resale."

16 U.S.C. § 824(d).  Nor has FERC held that demand response falls within

its definition of "electric service" as defined in 18 C.F.R. § 35.2(a).

Likewise, FERC has never ruled that a retail customer's demand response

commitment falls within the definition of "transmission," which applies to

the delivery of electricity over the interstate grid.  *See Florida Power &*

*Light Co*., 40 FERC ¶ 61,045, 61,120 (1987).  *See also* FPA § 201(c),

16 U.S.C. § 824(c) ("electric energy shall be held to be transmitted in

interstate commerce, if transmitted from a State and *consumed* at any point

outside thereof …") (emphasis added).  Accordingly, just as FERC

acknowledges that it has no FPA authority to determine which retail

customers may participate in demand response programs, FERC also has no

such authority to require retail utilities to make that determination.

FERC attempts to bridge this jurisdictional gap by asserting that

because a retail utility is subject to the authority of the retail regulator, there

is a "direct regulatory nexus" between the retail regulator and the retail

utility.  Rehearing Order at P 11; R.79 at 4; JA __.  That may be the case,

but it begs the question of what if anything that nexus has to do with

FERC's authority.  The key point is that there is absolutely no "direct

regulatory nexus" between FERC and the retail utility or between FERC and

the retail regulator that would authorize FERC to require the retail utility to

act on behalf of the retail regulator.

FERC fares no better if it actually intended that the retail utility act on

FERC's or the RTO's behalf in determining which entities may provide

service under FERC-approved tariffs.  This Court has ruled that agencies

may not delegate their authority to outside entities.  *See, e.g., United States*

*Telecom Ass'n v. FCC*, 359 F.3d 554, 566 (D.C. Cir. 2004); *see also Sierra Club v. Lynn*, 502 F.2d 43, 59 (5th Cir. 1974).  FERC similarly has recognized that it may not delegate "any substantive decision-making authority" to outside entities.  *San Diego Gas & Electric Co.*, 127 FERC ¶ 61,269 at P 109 (2009).  Yet, FERC attempted to do just that by requiring retail utilities to determine retail customers' eligibility to provide demand response service under a wholesale tariff.

In fact, FERC goes further by approving a tariff under which FERC will deem a demand response transaction to be subject to FERC authority unless the retail utility takes specific action.  Having already ruled in Order No. 719 that only state regulators–not FERC–are authorized to determine which retail customers may participate in wholesale demand response programs, FERC cannot now contend that it may oust a state regulator of that authority if a third-party fails to act on the state regulator's behalf.  If FERC does not affirmatively find that no state laws prohibit a retail customer's participation, FERC has no authority to sanction that participation.  In other words, a third party's inaction cannot confer upon FERC authority that FERC already determined it does not have.

## B.     FERC's Other Arguments Cannot Overcome Its Lack of Authority

FERC's acceptance of the PJM Tariff proposal and rejection of the Indiana Commission's and AEP's concerns initially rested on the notion that PJM's proposal is consistent with Order No. 719, which provides substantial "flexibility."  Initial Order at P 50; R.59 at 16; JA __.  Order No. 719's discussion of "flexibility" reflected FERC's decision not to dictate one-size-fits-all tariff language for every RTO.  But that "flexibility" did not confer upon RTOs the unbridled authority to delegate a compliance function to retail utilities.  Nor could it.

As to the Indiana Commission's proposal of putting the compliance obligation on the aggregators, FERC concluded that "shifting the responsibility for an eligibility representation to the aggregator of retail customers would require the implementation of a new, parallel process that could confuse, complicate, or delay registrations."  Rehearing Order at P 11; R.79 at 4; JA __.  This is pure speculation, as there is no evidence in the record supporting FERC's conclusion.  But even if FERC's concerns were valid, they would not provide a legal basis for assigning to AEP the obligation to be the jurisdictional enforcer.

Finally, FERC ruled that the Indiana Commission had not shown that it is unjust or unreasonable for PJM's Tariff to require utilities to police

retail customers' participation in PJM's demand response program.

Rehearing Order at P 11; R.79 at 4; JA__.  But the PJM Tariff revision at

issue was filed pursuant to Section 205 of the FPA.  R.1 at 1; JA__;

16 U.S.C. § 824d.[6]  Under FPA Section 205, the filing utility (and ultimately

FERC) has the burden of demonstrating that the proposed changes are "just

and reasonable."  16 U.S.C. §§ 824d(a) and 824d(e); *Maine Pub. Utils.*

*Comm'n v. FERC*, 454 F.3d 278, 283 (D.C. Cir. 2006); *Fla. Power & Light*

*Co. v. FERC*, 617 F.2d 809, 814 (D.C. Cir. 1980).  In this case, FERC failed

to show how PJM's new Tariff provision fell within FERC's lawful

authority.  That obligation cannot be satisfied by transferring to the Indiana

Commission the burden of showing why PJM's change was *not* just and

reasonable.  The Indiana Commission had no such burden.

---

[6] PJM's filing included red-lined sheets clearly showing that the
policing requirements placed on the local distribution company were newly
added provisions to the Tariff.  *See, e.g.*, R.1 at Att. B, Tariff Sheet Nos.
334A- 334A.01, 418-19; JA __-__, __-__.

## VI.    CONCLUSION

For the foregoing reasons, and those stated in Petitioner's Initial Brief, the Court should grant the Petition for Review and remand FERC's orders at issue.

Respectfully submitted,

/s/ *Steven J. Ross*

| | |
|---|---|
| Steven T. Nourse | Steven J. Ross |
| American Electric Power | Steptoe & Johnson LLP |
|   Service Corporation | 1330 Connecticut Ave. N.W |
| 1 Riverside Plaza, 29th Floor | Washington, DC  20036 |
| Columbus, Ohio  43215 | (202) 429-6279 |

Monique Rowtham-Kennedy
American Electric Power
  Service Corporation
801 Pennsylvania Ave. N.W. Suite 320
Washington, DC  20004

Counsel for Intervenor
American Electric Power Service Corporation

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and D.C. Circuit Rule 32(a), the undersigned certifies that this Brief of Intervenor American Electric Power Service Corporation in Support of Petitioner complies with the applicable type-volume limitations.  Exclusive of the portions exempted by FRAP 32(a)(7)(B)(iii) and D.C. Circuit Rule 32(a)(2), this brief contains 3,622 words. This certificate was prepared in reliance on the word-count function of the word-processing system used to prepare this brief.

/s/ *Steven J. Ross*
Steven J. Ross

## CERTIFICATE OF SERVICE

I, Steven J. Ross, hereby certify that on January 21, 2011, I electronically filed the foregoing Brief of Intervenor American Electric Power Service Corporation in Support of Petitioner with the Clerk for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system.

I also certify that, accordingly, all counsel of record have been served by the appellate CM/ECF system in compliance with Circuit Rule 25.

American Municipal Power, Inc. Gary J. Newell
 Thompson Coburn
 1909 K St., N.W., Suite 600
 Washington, DC  20006-1167
 Email:  gnewell@thompsoncoburn.com

American Public Power Association Randolph Lee Elliott
 Miller, Balis & O'Neil, P.C.
 1015 – 15th Street, N.W., Twelfth Floor
 Washington, DC  20005
 Email:  relliott@mbolaw.com

Federal Energy Regulatory Samuel Soopper, Attorney
Commission Federal Energy Regulatory Commission
 888 First Street, N.E.
 Washington, DC  20426
 Email:  Samuel.Soopper@ferc.gov

| | |
|---|---|
| Indiana Utility Regulatory Commission | Beth Krogel Roads<br>Indiana Utility Regulatory Commission<br>101 West Washington St., Suite 1500 E<br>Indianapolis, IN 46204<br>Email: bkroads@urc.in.gov |
| | Eric A. Eisen<br>Eisen & Shapiro<br>10028 Woodhill Road<br>Bethesda, MD 20817-1218<br>Email: eric@eisen-shapiro.com |
| PJM Industrial Customer Coalition | Robert A. Weishaar, Jr.<br>McNees, Wallace & Nurick, LLC<br>777 N. Capitol St., N.E., Suite 401<br>Washington, DC 20002-4292<br>Email: rweishaar@mwn.com |
| PJM Interconnection, L.L.C. | Barry S. Spector<br>Wright & Talisman, P.C.<br>1200 G St., N.W., Suite 600<br>Washington, DC 20005<br>Email: spector@wrightlaw.com |

/s/ *Steven J. Ross*
Steven J. Ross